IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARONA FURMAN, IGOR FURMAN, NICHOLE FURMAN, E.F., AND J.F., <br>　　　　Plaintiffs, <br><br>v. <br><br>FRONTIER AIRLINES, INC. <br><br>　　　　Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * |

## COMPLAINT

Sharona Furman, Igor Furman, Nichole Furman, E.F., and J.F. (collectively "Plaintiffs), through their undersigned attorney, complain and state as follows:

## PARTIES

1. Plaintiffs are natural persons who reside in Nassau County in the State of New York. Plaintiffs E.F. and J.F. are the minor children of Sharona and Igor Furman.

2. At the times of the allegations in this Complaint, Plaintiffs were booked as passengers on Frontier Flight 1095 from Islip, New York, to Cancun, Mexico with a stopover in Orlando, Florida.

3. Defendant, Frontier Airlines, Inc., is an airline that is headquartered in Denver, Colorado and was operating flights out of Islip, New York at the times of the allegations in this Complaint.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C. § 1331. This Court has supplementary jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

6. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully restated herein.

7. Plaintiffs originally booked their flight on Frontier Airlines in December 2021.

8. The purpose of their trip was to celebrate the Jewish holiday of Passover, which started April 15, 2022, at sundown, together with family members in Mexico.

9. On Passover, Orthodox Jewish persons observe strict dietary laws that prevent them from eating bread or any leavened product including when flour may have come into contact with water for longer than 18 minutes.

10. On April 15, 2022, Plaintiffs arrived at the airport on time for Flight 1095, which was scheduled to depart at 6 a.m. from Islip, New York to Orlando, Florida. From Orlando, Florida they were to board a connecting flight to Cancun, Mexico.

11. When Plaintiffs arrived for their flight, they were told by Defendant's gate agent, Pamela Jenkins, that the flight was overbooked and that the five Plaintiffs would not be able to board.

12. At no point did Plaintiffs voluntarily relinquish their five seats for Flight 1095.

13. Plaintiffs were informed by Ms. Jenkins that the next available flight would be on April 16, 2022. However, Plaintiffs informed Ms. Jenkins that because of their religious beliefs as Orthodox Jewish persons, they would not be able to travel on April 16, 2022, because it was both the Sabbath and the Passover holiday.

14. Ms. Jenkins then advised Plaintiffs to make other arrangements with another airline and were promised that Defendant would reimburse Plaintiffs the cost of the new travel arrangements.

15. Since Plaintiffs were counting on arriving in Mexico, where they had coordinated food and lodging that would adhere to the strict Passover dietary laws, the fact that Defendant denied Plaintiffs boarding on the eve of Passover placed them in an impossible situation, whereby they were unable to eat until they arrived at their destination.

16. Relying on the promise of reimbursement made by Defendant's agent, Plaintiffs booked flights with United Airlines from New York City, New York to Cancun, Mexico with a connection in Washington D.C., for a total amount of approximately $3,500.

17. The United Airlines flight from New York, New York to Washington, D.C., arrived late and Plaintiffs were unable to make their connecting flight to Cancun, Mexico.

18. Relying on the promise of reimbursement made by Defendant's agent, Plaintiffs booked flights on Delta Airlines from Washington, D.C. to Cancun, Mexico with a connection in Atlanta, Georgia for a total amount of approximately $9,200.

19. Plaintiffs made several attempts to obtain reimbursement by contacting Defendant's customer service at-least 30 times, but were subjected hour long hold times and calls disconnected. When Plaintiffs were finally able to talk with a representative, Defendant refused to reimburse Plaintiffs.

20. The Defendant never reimbursed the Plaintiffs for the additional costs that were incurred by the Plaintiffs when they were forced to book the additional flights on two separate airlines.

21. Plaintiff, Sharona Furman, also made two trips to Islip Airport in New York, to talk with Defendant's ticketing managers, but were again refused reimbursement.

22. Defendant eventually sent a check to Plaintiffs for $2,985. Defendant apparently claims that only two Plaintiffs were involuntarily denied boarding. This is untrue: all Plaintiffs were denied boarding.

23. Plaintiffs suffered extreme emotional distress – including extreme anxiety and the inability to sleep - from this ordeal as a direct result of Defendants' actions.

## COUNT I: 14 CFR § 250.5

**(Amount of denied boarding compensation for passengers denied boarding involuntarily)**

24. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully restated herein.

25. Under Title 14 CFR § 250.5(b), "a carrier shall pay to passengers in foreign air transportation who are denied boarding involuntarily at a U.S. airport from an oversold flight."

26. Under Title 14 CFR § 250.5(b)(3), "Compensation shall be at least 400 percent of the fare to the passenger's destination or first stopover, or $1,550, whichever is lower, if the carrier does not offer alternate transportation that, at the time the arrangement is made, is planned to arrive at the airport of the passenger's first stopover, or if not, the airport of the passenger's final destination less than four hours after the planned arrival time of the passenger's original flight."

27. At no point did Defendant make any arrangements for Plaintiffs' travel to the final destination less than four hours after the planned arrival time of Plaintiffs' original flight.

28. As described above, Defendant failed to appropriately compensate all five Plaintiffs with $1,550 each, for a total of $7,750, as required under Title 14 CFR § 250.5(b)(3).

3

## COUNT II: FAILURE TO REIMBURSE TRAVEL EXPENSES

### (Deceptive acts and Practices)

29. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully restated herein.

30. Under NY CLS Gen Bus § 349(a), "deceptive acts or practices in conduct of any business, trade, or commerce or in the furnishing of any service in [New York State] are [] unlawful."

31. As described above, Plaintiffs were forced to book flights with other airlines, after being promised by Defendant's agent that Defendant would reimburse the Plaintiffs for the added costs associated with their travel. The total costs were approximately $13,000.

32. Plaintiffs made over 30 attempts to contact Defendant for reimbursement but were denied the reimbursement promised by Defendant's agent.

33. Defendant engaged in deceptive acts and practices by promising to reimburse Plaintiffs and then failing to follow through on its promise.

## COUNT III: INFLICTION OF EXTREME EMOTIONAL DISTRESS

34. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully restated herein.

35. As described above, Plaintiffs are a family of five, who were put through extreme emotional hardships by Defendant. What should have been an enjoyable family trip to celebrate the Jewish holiday of Passover quickly turned into a nightmare because of Defendant's actions. Defendant compounded their emotional distress by refusing to take responsibility and appropriately reimburse and compensate Plaintiffs.

36. As a direct result of Defendant's actions, Plaintiffs suffered loss of sleep and anxiety from the stress of their interactions with Defendant and the financial burden placed on Plaintiffs. In addition, the anxiety caused by Defendant's actions, put an unnecessary and avoidable strain on Plaintiffs, as a family.

## COUNT IV: PROMISSORY ESTOPPEL

37. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully restated herein.

38. Defendant's agent, Pamela Jenkins, made a promise that was sufficiently clear and unambiguous to Plaintiffs. Gate agent Jenkins induced Plaintiffs to book flights on a different airline with the promise that Defendant would reimburse the cost to Plaintiffs.

39. Plaintiffs reasonably relied on Defendant's promise that they would reimburse the cost of the new travel arrangements when they booked flights on other airlines.

40. It was foreseeable that the Plaintiffs would be injured when Defendant refused to reimburse Plaintiffs. The cost of booking with other airlines totaled approximately $13,000, which was incurred by Plaintiffs' reliance on Defendant's promise to reimburse Plaintiffs for the additional costs.

41. Defendant did not rescind its offer until after Plaintiffs made new travel arrangements and arrived in Cancun, Mexico.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award the Plaintiffs damages to compensate them as required under the Code of Federal Regulations and under common law; award Plaintiffs damages to reimburse them the cost of making different travel arrangements; award Plaintiffs the fees and costs associated with bringing this action; and grant such further and additional relief as the Court may find equitable and just.

Respectfully submitted,

/s Shneur Nathan
Shneur Nathan
Nathan & Kamionski LLP
33 W. Monroe, Suite 1830
Chicago, Illinois 60603
snathan@nklawllp.com